UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AUDIOVISUAL PUBLISHERS, INC.,

                        Plaintiff,

      v.

MANOR CARE INC.,
HERFF JONES, INC.,
NYSTROM, INC., a Division of Herff Jones, Inc.,

                        Defendants.
_____

**REPORT
and
RECOMMENDATION**

04-CV-0098A(F)

APPEARANCES:      KLOSS, STENGER, KROLL & LoTEMPIO
                        Attorneys for Plaintiff
                        VINCENT G. LoTEMPIO, of Counsel
                        69 Delaware Avenue
                        Suite 1003
                        Buffalo, New York 14202

                        BUCHANAN INGERSOLL P.C.
                        Attorneys for Defendant Manor Care Inc.
                        PATRICK J. MAXWELL, of Counsel
                        268 Main Street
                        Suite 201
                        Buffalo, New York 14202

                        HODGSON RUSS LLP
                        Attorneys for Defendants Herff Jones, Inc. and
                         Nystrom, Inc., a Division of Herff Jones, Inc.
                        JEFFREY C. STRAVINO, of Counsel
                        One M&T Plaza
                        Suite 2000
                        Buffalo, New York 14203-2391

## <u>JURISDICTION</u>

This action was referred to the undersigned by Honorable Richard J. Arcara on

May 4, 2004.  The matter is presently before the court on Defendant Manor Care Inc.'s

motion to dismiss for lack of personal jurisdiction (Doc. No. 6) filed April 29, 2004.

## BACKGROUND

Plaintiff Audiovisual Publishers, Inc. ("Plaintiff" or "AVP"), commenced this action on February 12, 2004, alleging against Defendants Manor Care, Inc. ("Defendant" or "Manor Care"), Herff Jones, Inc. ("Herff Jones"), and Nystrom, Inc. ("Nystrom") (together, "Defendants"), seven claims for relief based on negligence (Causes of Action 1 through 3), conversion (Causes of Action 4 through 6) and replevin (Cause of Action 7). In particular, Plaintiff alleges that while certain audiotapes produced and owned by Plaintiff were in the Defendants' possession and care, Defendants were the bailees of such audiotapes. Plaintiff seeks either the return of the audiotapes or, alternatively, if such audiotapes have, as Defendants maintain, been destroyed, monetary damages in the amount of the replacement value of the audio tapes in an unrecorded form. Plaintiff alleges jurisdiction exists in this court based on diversity of citizenship of the parties and the amount in controversy exceeds $ 100,000.

On April 29, 2004, Manor Care filed a motion to dismiss the action for lack of personal jurisdiction (Doc. No. 6) ("the Motion"). Attached to the Motion are the supporting affidavits of Herff Jones Vice President P.T. Rogers ("Rogers Affidavit"), and Manor Care Senior Legal Assistant Terry G. Wilson ("Wilson Affidavit"), and a Memorandum in Support of Manor Care Inc.'s Motion to Dismiss for Lack of Jurisdiction ("Defendant's Memorandum"). On June 4, 2004, Plaintiff filed a motion seeking discovery limited to the personal jurisdiction issue raised by Manor Care (Doc. No. 13) ("Plaintiff's Discovery Motion"), a Memorandum of Law in Opposition to Defendant Manor Care's Motion to Dismiss for Law of Personal Jurisdiction and in Support of Plaintiff's Cross-Motion for Limited Discovery (Doc. No. 11) ("Plaintiff's Memorandum"),

and the Affidavit of Vincent G. LoTempio, Esq. (Doc. No. 12) ("First LoTempio Affidavit").

Pursuant to a Stipulation and Order filed June 17, 2004 (Doc. No. 15), the parties agreed that Defendant Manor Care would provide Plaintiff with discovery as to the personal jurisdiction issue raised by Manor Care in the Motion.  Following the completion of the limited discovery, Plaintiff, on February 10, 2006, filed another affidavit of Vincent G. LoTempio, Esq. (Doc. No. 23) ("Second LoTempio Affidavit") in support of the motion, attached to which are exhibits relative to AVP's opposition to the Motion to dismiss ("Plaintiff's Exh __").

On February 24, 2006, Manor Care filed its Reply Memorandum of Law Submitted in Further Support of Manor Care, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 26) ("Defendant's Reply"), and a Continuation of Exhibits (Doc. No. 27).  Oral argument was deemed unnecessary.

Based on the following, Defendant Manor Care's motion to dismiss for lack of personal jurisdiction should be GRANTED.


## FACTS[1]

Plaintiff Audiovisual Publishers, Inc. ("Plaintiff" or "AVP"), a New Jersey corporation with its principal place of business in Buffalo, New York, produces audio tapes to correlate with filmstrips produced by other companies for the education field. Pursuant to a 1966 Agreement ("the Agreement"), AVP, at its own expense, was to

---

[1] Taken from the pleadings and motion papers filed in this action.

produce audio tapes to correlate with educational "captioned" filmstrips, *i.e.*, a filmstrip

containing captions describing the picture in each frame, produced and copyrighted by

Eye Gate House, Inc. ("Eye Gate"), located in Jamaica, New York.  In the 1960s,

distributors of filmstrips began providing audio tapes containing scripted descriptions of

the pictures in each frame, as well as teacher comments for all the pictures on the

captioned filmstrip.  Filmstrip producers began making "uncaptioned" filmstrips following

the advent of correlated audio tapes.  Pursuant to the Agreement, AVP produced

master audio tapes ("the AVP masters") which were used to make audio tape

recordings for sale with Eye Gate's copyrighted filmstrips.  AVP maintains that Eye Gate

agreed that upon ceasing to sell such filmstrips, AVP would receive the rights to Eye

Gate's copyrighted filmstrips and Eye Gate would return the correlated master tapes to

AVP, although the Agreement is silent as to this issue.  The Agreement further provided

that AVP would receive from Eye Gate $ 1.50 for each audio tape AVP produced from

the master tapes for Eye Gate, and $ .50 for each audio tape produced from the AVP

masters by a supplier other than AVP should Eye Gate choose to have AVP's

correlated audio tapes produced by a company other than AVP.

In 1967, Eye Gate was acquired by Cenco, Inc. ("Cenco"); however, despite

Cenco's acquisition of Eye Gate, the terms of the Agreement remained in effect.  In

1970, Eye Gate was merged into, and became a division of Cenco.  Between 1969 and

1975, AVP delivered to Cenco 700 master tapes correlating to "uncaptioned" filmstrips

manufactured by Eye Gate.

In 1972, AVP commenced litigation in United States District Court for the

Southern District of New York alleging Cenco was purchasing copies of audio tapes

4

made from the AVP masters without paying AVP the requisite royalties pursuant to the Agreement. *Audiovisual Publishers, Inc. v. Cenco, Inc.*, 72 Civ. 1681 (S.D.N.Y. 1972). On July 10, 1975, the matter was settled pursuant to a consent judgment ("the Consent Judgment"),[2] which called for AVP to turn over the original AVP masters to Cenco to ensure that AVP did not sell copies of the AVP masters to other companies who might compete with Cenco. Accordingly, AVP turned over to Cenco 637 AVP captioned master audio tapes and many uncaptioned master audio tapes.

In 1982, Defendant Manor Care, a holding company, acquired Cenco, including the Eye Gate division. Manor Care is a Delaware Corporation with its principal place of business in Toledo, Ohio. In 1985, the Eye Gate division was sold to Defendant Herff Jones, Inc. ("Herff Jones"), the parent company of Defendant Nystrom, Inc. ("Nystrom").[3] Prior to Herff Jones' acquisition of Eye Gate, any AVP masters that had been transferred to Cenco were placed in the custody of Associated Audio/Video & Digital Services, Inc. ("Associated Audio"), a non-party,[4] located in Connecticut.[5]

---

[2] A copy of the Consent Judgment is attached to the Complaint.

[3] According to Herff Jones Vice President Rogers, "[i]n January 1985, all of Carnation Company's publicly traded stock was acquired by Nestle, Inc., in a tender offer. . . .[i]n July 1985, Nestle, Inc. sold this Eye Gate business to Herff Jones, the current owner of the business." Rogers Affidavit ¶¶ 2-3. There is no explanation in the record as to how or when Eye Gate came to be a division of Carnation Company.

[4] No further description of Associated Audio, including the type of business in which Associated Audio is engaged, is provided.

[5] The parties dispute whether Herff Jones or Nystrom ever acted as Manor Care's sales agents with regard to any AVP masters in Manor Care's possession. In particular, AVP asserts

> In or around 1982, Manor Care informed AVP that it wished to transfer the Eye Gate assets to Herff Jones to enable Herff Jones to act as a sales agent for it, and AVP agreed that Herff Jones and/or its wholly-owned subsidiary Nystrom would act as sales agent for the AVP masters in the possession of Manor Care. . . . In or around 1982, Manor Care apparently transferred all of [AVP's] captioned and uncaptioned master tapes in its possession to Herff Jones to permit the Herff Jones subsidiary, Nystrom, to act as sales agent. In or around 1982, Herff Jones apparently set up defendant Nystrom to act as sales agent for sale of tape copies from AVP's captioned and

In January 1992, Cenco informed AVP that Nystrom was ceasing sales of all Eye Gate products, including audio tapes produced from the AVP masters.  AVP immediately contacted Manor Care's attorney to request the return of the AVP masters, and Manor Care responded that the AVP masters had been transferred to Herff Jones, advising AVP to address any request that the AVP masters be returned to Herff Jones and Nystrom.  Accordingly, AVP contacted Herff Jones and Nystrom requesting the return of the AVP masters.  Herff Jones and Nystrom, however, informed AVP that they wished to develop videotapes using the AVP masters as the soundtrack.  AVP thereupon agreed to permit the AVP masters to remain, for a reasonable time, in the care of Herff Jones and Nystrom to allow for the production of such videotapes.  To date, neither Herff Jones nor Nystrom has ever produced videotapes from the AVP masters.

In 2000, AVP repeated its demand for the return of the AVP masters and, in February 2000, Manor Care's counsel informed AVP that Nystrom had agreed to search its archives for the AVP masters.  Nevertheless, on September 13, 2001, attorneys for Herff Jones and Nystrom advised AVP that the AVP masters had been destroyed in a flood while in Associated Audio's care and could not be returned to AVP.

AVP alleges that Defendants Manor Care, Herff Jones and Nystrom were each

---

uncaptioned masters, and in or around 1982, Nystrom began selling audio tapes produced from some or all of the AVP masters referenced above, as well as from some or all of the approximately 700 AVP uncaptioned masters also provided.

Plaintiff's Memorandum at 3 (citing Complaint ¶ 24-27).

In contrast, Manor Care maintains that "Herff Jones and its Nystrom division have never acted as sales agents for Manor Care, Inc. . . ."  Rogers Affidavit ¶ 4.

the bailees of the AVP masters while in possession of such audio tapes and seeks to

recover from each of the Defendants the replacement value of the AVP masters that

were destroyed while in Defendants' care based on Defendants' negligence as bailees.

AVP alternatively alleges that, if the AVP masters were not, as Herff Jones and Nystrom

allege, destroyed in the flood,   Defendants, by refusing to return the AVP masters to

AVP, have unlawfully converted the masters.  Finally, AVP demands the return of the

AVP masters, the Eye Gate filmstrip masters, and money damages for any depreciation

in value based on physical or other damage to the AVP masters, as well as injunctive

relief ordering the AVP masters not be removed from the state, transferred, sold,

pledged, assigned or otherwise disposed of prior to the court's action on AVP's replevin

claim pursuant to New York Civil Practice Law and Rules § 7109.


## DISCUSSION

Defendant Manor Care, a holding company incorporated in Delaware with its

principal place of business in Toledo, Ohio, moves to dismiss the action as against it for

lack of personal jurisdiction.  In support of dismissal, Manor Care argues that it is a

nondomicilliary corporation without sufficient connections to New York to support

personal jurisdiction, given that Manor Care is not registered to do business, does not

maintain an office, mailing address or telephone number, own property, have a bank

account, solicit business, owe or pay taxes, or have an agent for service of process in

New York.  Manor Care's Memorandum at 1.  Nor has AVP made any allegations

connecting Manor Care to any tortious conduct in New York.  *Id*.  Finally, Manor Care

urges that this court's exercise of personal jurisdiction over Manor Care would violate

the Fourteenth Amendment's Due Process Clause because, absent the requisite

minimum contacts between Manor Care and New York, Manor Care cannot be said to

have purposefully availed itself of the privilege of conducting activities within New York

and thereby invoke the benefits and protections of New York laws so as to reasonably

anticipate being sued in a New York court. *Id*. at 8-9.

 In opposition to Manor Care's motion to dismiss, AVP asserts that Manor Care is

subject to personal jurisdiction in New York pursuant to New York's long-arm personal

jurisdiction statutes based on Cenco's execution in New York of the 1975 Consent

Judgment, which subsequently governed the "ongoing business relationship" between

Manor Care and AVP regarding the transfer of the AVP masters, payment of royalties,

and auditing of past royalty payments.  Plaintiff's Memorandum at 6.  AVP also asserts

Manor Care's prior agreements with Eye Gate are evidence of an ongoing business

relation with Eye Gate, a New York company, and Cenco.  *Id*. At 6-7.  As such, AVP

urges that New York Civ. Prac. L. & R. § 302(a)(1) (based on the transaction of

business in New York) provides for long-arm jurisdiction in this court over Manor Care,

without violating due process.  *Id*. at 7-8.  Alternatively, AVP maintains this court has

personal jurisdiction over Manor Care pursuant to New York Civ. Prac. L. & R. ("N.Y.

CPLR")[6] § 301 because Manor Care, through its wholly-owned subsidiaries, has

"engaged in such a continuous and systematic course of 'doing business'" in New York

supporting a determination that Manor Care is "present" in New York, even though

AVP's claims for relief do not pertain to Manor Care's subsidiaries' New York activities.

---

[6] Unless otherwise indicated, references to N.Y. CPLR are to McKinney 2001 & 2005 Supp.

8

*Id*. at 8.  Following discovery limited to the personal jurisdictional issue, AVP aserted

that Manor Care's responses to the limited discovery establish Manor Care has

sufficient contacts with New York to sustain personal jurisdiction pursuant to N.Y. CPLR

§§ 301 and 302.  Second LoTempio Affidavit ¶¶ 2, 8.

Manor Care, in further support of dismissal, argues that despite engaging in

discovery limited to the personal jurisdiction issue, AVP is unable to establish that

Manor Care is subject to personal jurisdiction in New York either based on Manor

Care's "doing business" or "transacting business" through a wholly-owned subsidiary.

Manor Care's Reply at 2-6.  Additionally, Manor Care maintains that, given the absence

of any conduct that would cause Manor Care to anticipate being sued in New York, this

court's exercise of personal jurisdiction over AVP would offend due process.  *Id*. at 6.


1.      **Personal Jurisdiction**

In this case, the parties do not dispute that Manor Care is a foreign corporation

incorporated under the laws of Delaware and maintaining its principal place of business

in Toledo, Ohio.  Personal jurisdiction over a non-domiciliary defendant in a diversity or

federal question case, like the instant action, is determined by reference to the law of

the state in which the court sits, unless otherwise provided by federal law.  *Hoffritz for

Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985); *Vendetti v. Fiat Auto

S.P.A.*, 802 F.Supp. 886, 889 (W.D.N.Y. 1992) (citing cases).  As federal laws do not

provide for nationwide service of process over a non-domiciliary defendant in tort

actions pursuant to state common law, this court can exercise personal jurisdiction over

AVP only to the extent permitted by New York law.  *See Engler v. General Electric Co.*,

32 F.2d 913, 915 (2d Cir. 1939) (where action based on common law tort, court can obtain jurisdiction only through diversity of citizenship).

The New York laws relevant to the instant case are N.Y. CPLR §§ 301 and 302, as interpreted and applied by New York courts.  Specifically, a court has personal jurisdiction over a foreign defendant under N.Y. CPLR § 301 ("§ 301")  if the defendant " is engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in this jurisdiction." *Delagi v. Volkswagen AG of Wolfsburg, Germany*, 278 N.E.2d 895, 896 (N.Y. 1972).  Jurisdiction over a foreign defendant may also lie in New York under New York's long-arm statute, N.Y. CPLR § 302 ("§ 302") based upon either transacting business within New York, or committing a tortious act either within New York or outside New York with injury resulting to person or property within New York.  *Bensusan Restaurant Corporation v. King*, 126 F.3d 25, 27 (2d Cir. 1997).

A plaintiff may defeat a motion to dismiss brought prior to discovery by making a *prima facie* showing of jurisdiction either through "legally sufficient allegations of jurisdiction" in the pleadings, *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir.), *cert. denied*, 498 U.S. 854 (1990), or through its own affidavits and supporting materials.  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981).  Where, however, discovery relevant to personal jurisdiction has been conducted, as in the instant case, "a plaintiff must demonstrate by a preponderance of the evidence that *in personam* jurisdiction exists" to prevail on a motion to dismiss. *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir. 1984).

Here, the parties have engaged in a course of discovery limited to the personal jurisdiction issue.  Significantly, AVP does not challenge as unmet or insufficient the discovery requests AVP served on Manor Care.  As such, to survive the instant motion to dismiss, AVP must, by a preponderance of the evidence, demonstrate that in personam jurisdiction exists over Manor Care.  Upon the record in the instant case, however, there is no basis for personal jurisdiction over Manor Care under N.Y. CPLR §§ 301 or 302.

## A.   N.Y. CPLR § 301___

Section 301 permits a New York court to exercise personal jurisdiction over a foreign corporation that is "engaged in such a continuous and systematic course of 'doing business' in New York as to warrant a finding of its 'presence' in [the state]." *Landoil Resources v. Alexander & Alexander Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (quoting *Delagi v. Volkswagenwerk A.G. of Wolfsburg, Germany*, 278 N.E.2d 895, 896-97 (N.Y. 1972) (applying New York Civ. Prac. L. & R. § 301), even if the cause of action is unrelated to the defendant's New York activities.  *Jazini v. Nissan Motor Company, Inc.*, 148 F.3d 181, 184 (2d Cir. 1999) (citing *Taca Int'l Airlines, S.A. v. Rolls-Royce of England, Ltd.*, 204 N.E.2d 329, 331 (N.Y. 1965)).

Where, as here, the claim is that the Manor Care, which is a holding company, is present in New York based on activities of its wholly-owned subsidiaries, the presence of a subsidiary in New York will not, by itself, establish the parent's presence for the purpose of personal jurisdiction in that state.  *Jazini, supra*, at 184 (citing *Volkswagenwerk Aktiengesellshcaft v. Beech Aircraft Corp.*, 751 F.2d 117, 120 (2d Cir.

1984)).  For a New York court to have § 301 jurisdiction under those circumstances, the

subsidiary must be either an "agent" or a "mere department" of the foreign parent.

*Jazini, supra*, at 184 (citing *Koehler v. Bank of Bemuda Ltd.*, 101 F.3d 863, 865 (2d Cir.

1996)).

That a subsidiary is an agent of the parent may be established by showing that

the subsidiary "does all the business which [the parent corporation] could do were it

here by its own officials."  *Frummer v. Hilton Hotels Int'l, Inc.*, 227 N.E.2d 851, 854

(N.Y.), *cert. denied*, 389 U.S. 923 (1967).  Further, "[a] subsidiary will be considered a

'mere department' only if the foreign parent's control of the subsidiary is so pervasive

that the corporate separation is more formal than real."  *Porter v. LSB Industries, Inc.*,

600 N.Y.S.2d 867, 873 (4th Dep't. 1993).  In determining whether personal jurisdiction

exists under § 301 on the basis that the subsidiary is a "mere department" of the parent,

the court must consider four factors including (1) common ownership which is

"essential," (2) the subsidiary's financial dependency on the parent, (3) the degree to

which the parent is involved in the selection and assignment of the subsidiary's

executive personnel and failure to observe corporate formalities, and (4) the amount of

control exercised by the parent over the subsidiary's marketing and operational policies.

*Jazini, supra*, at 184 (citing *Beech Aircraft, supra*, at 120, 121, 122).

In the instant case, AVP, in attempting to establish that Manor Care is subject to

personal jurisdiction in New York, relies on Manor Care's responses to discovery and

interrogatories served in connection with the discovery on the personal jurisdiction

issue.  In particular, AVP maintains that as a result of such discovery, AVP has learned

that Manor Care or its subsidiaries purchase various patient care merchandise,

12

including patient long-arm televisions,[7] adult incontinence products and fabrics from various locations in New York.  Second LoTempio Affidavit ¶ 3.  Manor Care or its subsidiaries also own a parcel of real property located in Colonie, New York, valued at $ 275,000, and have recently owned two other parcels of real property in New York.  *Id*. ¶ 4.  A Manor Care subsidiary had revenue totaling $ 3 million from orders solicited in New York to provide physical therapy staffing.  *Id*. ¶ 5.   Manor Care admitted that when the instant litigation was commenced Manor Care exclusively controlled Manor Care of New York, a subsidiary for which, on August 25, 2004, more than one month after AVP served Manor Care with the First Set of Interrogatories, Manor Care filed with New York's Department of State a certificate of merger thereby merging Manor Care of New York out of existence.  *Id*. ¶ 6.  Finally, AVP asserts that Cenco, the company on whose actions relating to the master tapes the instant litigation is predicated, was a New York corporation which, in 1970, acquired Eye Gate and which, in 1982, was merged into Manor Care.  *Id*. ¶ 7.  According to AVP, this evidence establishes that Manor Care has engaged in a continuous and systematic course of doing business in New York so as to support personal jurisdiction.  *Id*. ¶ 8.  AVP's assertions are, however, without merit.

Specifically, none of the evidence on which AVP relies demonstrate the presence of the four factors necessary to establish, by a preponderance of the evidence, that any of Manor Care's subsidiaries is a mere department of Manor Care. First, the extensive exhibits AVP submits in an attempt to establish common ownership of AVP and its subsidiaries fails to establish that any such subsidiaries are located or

---

[7] No description of such "patient long-arm televisions" is provided.

conduct business in New York.  Rather, AVP has submitted a two-page exhibit entitled

"Manor Care, Inc. Corporate Structure" which, in the format of an inverted tree with

Manor Care as the trunk, shows many branches composed of subsidiary companies.

Plaintiff's Exh. A.[8]  Nothing within this exhibit, however, establishes anything other than

the names of such subsidiaries within Manor Care's corporate structure.

Following the "Manor Care, Inc. Corporate Structure" exhibit are a 55-page

exhibit ("Plaintiff's Exh. B"), a 25-page exhibit ("Plaintiff's Exh. C"), and a 63-page exhibit

("Plaintiff's Exh. H"), on each page of which is headed with the name of company, and

lists the names, titles and addresses of the company's corporate officers and directors.

Plaintiff's Exhs. B, C and H.  The information relevant to Manor Care is found on the first

page of Plaintiff's Exh. H.  Some of the companies listed in these exhibits are also found

in the preceding exhibit depicting Manor Care's corporate structure, and the corporate

officers and directors for all such companies are essentially identical, with a few

exceptions,[9] and all share the same address: 333 N. Summit St., Toledo, Ohio 43604,

---

[8] Although AVP has not separately tabbed its exhibits, nor has AVP included any dividers between the exhibits, the court distinguishes between them based on each exhibit's page numbers.  For example, immediately following the Second LoTempio Affidavit is a document on which the page numbers indicate it consist of two pages.  The court considers such document to be Plaintiff's Exh. A.  Following Plaintiff's Exh. A is a document of 55 pages, which the court considers to be Plaintiff's Exh. B.

[9] The exceptions include Mid-Atlantic Post Acute Network, Inc., which is identified as a "dormant nursing home business" and which has only four of the 25 officers for the other companies, and six directors, whereas the other companies each have a single director, R. Jeffrey Bixler, and lists no address or telephone number.  Plaintiff's Exh. C at 11.  Another exception is "MNR Finance Corp." which is identified as a "financing company" and which has only 8 officers, six of which are in common with the other companies, and three directors, and shares the same address and telephone number as the other companies, with the exception of one of the officers for whom a Delaware address is provided.  Plaintiff's Exh. C at 12.  The final exception is Winter Park Nursing Center, Inc., which is identified as a "nursing home business" with 13 officers, 12 of which are in common with the 26 officers of the other companies, and two directors, both of whom are officers of the other companies.  Plaintiff's Exh. C at 25.  Winter Park Nursing Center, Inc. is the only company for which R. Jeffrey Bixler is not listed as a director, although he is listed as an officer.  *Id.*

and telephone number: (419) 252-5500.  Plaintiff's Exhs. B, C. and H.  Although the

Toledo address listed is the same as Manor Care's principal place of business,

Interrogatory Response[10] No. 1, nowhere within these exhibits, however, is there any

indication where the work of each subsidiary is performed, including whether any work

is performed in New York.  Nor do these exhibits establish any of the other three

factors, including financial dependency on Manor Care, that Manor Care is involved in

selecting and assigning executive personnel for any of the companies, or Manor Care's

degree of control over any subsidiary company's marketing and operational policies.

     That Manor Care is identified as a "holding company" is particularly significant to

the second factor requiring the subsidiary be financially dependent on the parent.  *See*

*Porter*, *supra*, at 873 ("the parent, as a holding company in the business of acquiring

other entities for investment purposes, is financially dependent on its subsidiaries" such

that the second factor does not favor finding the parent present where the subsidiary

conducts business).  Simply put, Plaintiff's Exhs. B, C and H establish nothing relevant

to this case other than some commonality as to ownership among Manor Care and its

subsidiaries.

     Another exhibit, comprised of two pages lists 13 Manor Care partnerships, joint

ventures and other interest, for which no New York connection is apparent, Plaintiff's

Exh. D at 1, and 35 Manor Care limited liability companies, of which two are "qualified"[11]

in New York, including Colonie Arden, LLC, and Williamsville Arden, LLC.  Plaintiff's

---

[10] Plaintiff's Exh. G.

[11] Although AVP does not explain what the term "qualified" means, the context in which the term
appears indicates the term refers to states in which the subject company is licensed or registered to do
business.  *See* Interrogatory Response No. 2.

Exh. D at 2.  Similarly, Plaintiff's Exh. E lists Manor Care's subsidiaries and the states in

which they are "qualified."  Plaintiff's Exh. E.  There is no evidence, however, as to any

of the four factors listed in *Porter*, *supra*, necessary to establish that any of these

companies is an agent or mere department of Manor Care, including commonality of

ownership, financial dependence on Manor Care, that Manor Care selects and assigns

any of the companies' executive personnel and fails to observe corporate formalities, or

the degree of Manor Care's control of the companies' marketing and operational

policies in New York.

Plaintiff's Exh. F consists of 58 pages showing total revenue of $ 2,978,601 for

January 1, 1997 through August 27, 2004 which AVP maintains Manor Care obtained

from New York through an unspecified subsidiary.  Second LoTempio Affidavit ¶ 5 and

Plaintiff's Exh. F.  The line entries comprising the exhibit, however, show only amounts

invoiced by various companies in New York and a date for each invoice.  Plaintiff's Exh.

F.  Nowhere within this exhibit is Manor Care or any of its subsidiaries even mentioned,

although Manor Care, in responding to Plaintiff's Interrogatories, explains that such

revenue was earned by a subsidiary, *i.e.*, Richards Healthcare, Inc. ("Richards

Healthcare"), a Texas corporation that provides physical therapy and staffing assistance

for which, on occasion, orders to provide physical therapy staffing assistance are

solicited from New York.  Interrogatory Response Nos. 5 and 6.  Nor is there any

indication that the almost $ 3 million in revenue over a 7 ½ years period of time is

substantial in light of either Richards Healthcare's or Manor Care's total revenue from all

its subsidiaries and other related companies during that same time period.  *See Porter*,

*supra*, at 871 (observing, in context of considering whether parent corporation was

subject to personal jurisdiction in New York based on business conducted in New York by subsidiary that subsidiary derived less than 1% of its revenues from the sale of goods or services in New York).

Although Manor Care did admit that some of its subsidiaries purchased certain products from New York companies, Interrogatory Response No. 3, nowhere within that admission is there any indication that the decision to purchase such products was made or directed to be made by Manor Care.  Nor is the fact that three Manor Care subsidiaries currently own or recently owned property in New York significant without some demonstration that such subsidiaries maintained a principal-agent relationship with Manor Care.  As to AVP's argument that when the instant litigation was commenced, Manor Care "exclusively controlled an entity styled Manor Care of New York," and, on August 25, 2004, one month following the commencement of this action, Manor Care filed a certificate of merger with New York's Department of State, thereby merging Manor Care of New York out of existence, Second LoTempio Affidavit ¶ 6, Manor Care explains that although such certificate was not filed until August 25, 2004, the actual merger of Manor Care of New York was completed in July 2002, 19 months prior to the commencement of this action.  Defendant's Reply at 3-4.  In support of this statement, Manor Care filed a copy of such certificate of merger (Doc. No. 27), which establishes July 31, 2002 as the effective date of the merger.  AVP has not challenged this assertion as inaccurate.

To summarize, nowhere within any of the exhibits provided by AVP is there any evidence establishing that any Manor Care subsidiary is financially dependent on Manor Care as required for the second factor by *Porter*, *supra*, that Manor Care was involved

17

with the selection or assignment of any subsidiary's executive personnel and fails to observe the formalities between the entities, as to the third *Porter* factor, or that Manor Care exercises any degree of control over any subsidiary's marketing and operational policies, as the fourth *Porter* factor requires.  Furthermore, it is improper for the court to search the record to find evidence on which to construct an argument on this issue for AVP, which is represented by counsel, as to do so would indicate the court has abandoned its neutral role in favor of advocating on behalf of AVP.  *See Amnesty America v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.").  *See also Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995) ("[J]ust as a district court is not required to scour the record looking for factual disputes, it is not required to scour the party's various submissions to piece together appropriate arguments.").  *See Weinstock v. Wilk*, 2004 WL 367618, * 2 (D.Conn. Feb. 25, 2004) (denying defendant's motion for reconsideration of decision denying summary judgment on one claim on basis that defendant, in both memoranda of law submitted in support of summary judgment and motion for reconsideration, merely stated, without explicitly arguing that plaintiff's claim was unsupported by any factual allegations).  AVP thus has failed to establish, by a preponderance of the evidence subsequent to discovery limited to the personal jurisdiction issue, as was its burden, that any subsidiary of Manor Care is an "agent" or "mere department" of Manor Care so as to subject Manor Care to personal jurisdiction in New York.  *Jazini*, *supra*, at 184.

Alternatively, AVP asserts that Manor Care is subject to personal jurisdiction in

New York because Manor Care is the successor-in-interest to Cenco, which is the successor-in-interest to Eye Gate, whose principal place of business was located in Jamaica, New York.  Second LoTempio Affidavit ¶ 7.  In other words, AVP contends that Eye Gate would have been amendable to suit in New York pursuant to § 301 and Manor Care, as Eye Gate's successor-in-interest, is thus subject to personal jurisdiction in New York.

With regard to personal jurisdiction over a business entity based on its status as the successor-in-interest to another entity which was subject to personal jurisdiction in New York, there is a "sound distinction in law between a statutory merger and an acquisition of assets."  *Schenin v. Micro Copper Corp.*, 272 F.Supp. 523, 526 (S.D.N.Y. 1967).  *See Viacom Intern., Inc. v. Melvin Simon Productions, Inc.*, 774 F.Supp. 858, 864 (S.D.N.Y. 1991) (holding prior acts of third party could not be attributed to defendant assignee to establish derivative personal jurisdiction); *see also Colson Services Corp. v. Bank of Baltimore*, 712 F.Supp. 28, 30 (S.D.N.Y. 1989) (holding successor-in-interest may be subject to personal jurisdiction based on actions of predecessor only where the two entities have merged).  Specifically, it is only through a statutory merger, rather than a mere acquisition of assets, that an acquiring corporation also assumes the acquired company's liability so as to subject the acquiring company to personal jurisdiction based on the acquired company's activities in New York.  *Id*.

Here, the undisputed evidence, as provided by Manor Care, establishes that in 1967 Eye Gate, a New York corporation which maintained its principal place of business in New York, was acquired by Cenco and merged into Cenco, becoming a division of

Cenco, in 1970.  Manor Care's Response to AVP Interrogatory No. 12.[12]   In 1982,

Cenco was merged into Manor Care.  *Id.*  In July 1985, however, Herff Jones acquired

Eye Gate not from Manor Care but, rather, from Nestle, Inc., which, upon acquiring all of

Carnation Company's publicly traded stock in a tender offer in January 1985, came to

own Eye Gate.  Rogers Affidavit ¶¶ 2-4.  Although there is no explanation in the record

as to how Eye Gate came to be owned by Carnation Company, AVP does not challenge

the accuracy of this factual assertion.[13]  Any AVP masters delivered to Cenco pursuant

to the 1975 Consent Judgment were then placed in the custody of one Associated

Audio/Visual & Digital Services, Inc. ("Associated Audio"), located in Connecticut.  *Id.* ¶

5.  As noted, Facts, *supra*, at 6, Herff Jones Vice President Rogers asserts, and AVP

does not dispute, that Herff Jones was informed by an Associated Audio representative

that the AVP masters in Associated Audio's possession were destroyed in a flood in

Connecticut during the 1990s.  *Id.*

These uncontroverted facts are insufficient to establish, by a preponderance of

the evidence, that Manor Care is subject to personal jurisdiction in New York based on

any conduct by Eye Gate in New York more than 20 years ago.  In particular, nothing

indicates that any of the alleged negligence or conversion occurred during Manor Care's

ownership of Eye Gate.  Moreover, nothing in the record establishes that Eye Gate was

actually merged into Cenco or Manor Care.  In fact, that Eye Gate was, subsequent to

---

[12] A copy of Manor Care's Responses to AVP's First Set of Interrogatories served in connection
with discovery conducted as to the personal jurisdiction issue is attached as an exhibit to the Second
LoTempio Affidavit.  The court notes the exhibits attached to the Second LoTempio Affidavit are not
separately denominated with any letter or number so as to distinguish between such exhibits.

[13] While not, as noted, specifically explained, the court infers that Carnation Company acquired
Eye Gate from Manor Care.

being acquired by Cenco and Manor Care, somehow acquired by Carnation Company indicates that Eye Gate was not merged into Manor Care but, rather, simply acquired as a subsidiary in accord with Manor Care's business as a holding company.  As such, AVP's attempt to establish, by a preponderance of the evidence, the existence of personal jurisdiction over Manor Care in New York based on an asserted merger of Eye Gate into Manor Care in 1982, fails.

Defendant Manor Care's motion to dismiss the complaint as against it for lack of personal jurisdiction under § 301 should be GRANTED.


**B.**    **NY CPLR § 302**

A defendant not "doing business" in New York within the meaning of  § 301, may nevertheless be subject to personal jurisdiction in New York under its "long-arm" jurisdiction statute based on a lesser showing of contacts with the state provided the cause of action arose from such contacts.  N.Y. CPLR § 302; *Bensusan Restaurant Corporation v. King*, 126 F.3d 25, 26 (2d Cir. 1997); *Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 763 (2d Cir. 1983); *Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 229 (W.D.N.Y. 1997*)*.  As relevant to the instant case, New York's long-arm statute, N.Y. CPLR § 302, provides

(a) Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
  (1) transacts any business within the state or contracts anywhere to supply goods or services in the state . . . . or
  * * * *
  (4) owns, uses or possesses any real property situated in the state.

N.Y. Civ.Prac.L. & R. § 302(a)(1) and (4).[14]

If the exercise of personal jurisdiction over a non-domiciliary defendant may be based upon New York's long-arm statute, the court must also determine whether such exercise comports with due process requisites. *Bensusan Restaurant*, *supra*, at 27. The conferral of long-arm jurisdiction rests on five elements, including (1) a tortious act committed by the defendant outside New York; (2) the cause of action arises from the act; (3) the act causes injury to person or property inside New York; (4) the defendant expected or reasonably should have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce. *LaMarca v. Pak-Mor Manufacturing Company*, 735 N.E.2d 883, 886 (N.Y. 2000). The court examines whether such long-arm jurisdiction may be exercised over Manor Care under § 302(a)(1) or (4).

### 1.     N.Y. CPLR § 302(a)(1)

Under § 302(a)(1), a court may exercise personal jurisdiction over any nondomiciliary who, either in person or through an agent, "transacts business within the state or contracts anywhere to supply goods or services in the state." N.Y. Civ.Prac. L. & R. § 302(a)(1) (McKinney 1990). A demonstration that a defendant "transacted business" in New York so as to be suable in New York under § 302(a)(1), provided that the cause of action arises from that transaction, requires considerably less contact with

---

[14] The other bases for long-arm jurisdiction, including the commission of a tort within the state, § 302(a)(2), and the commission of a tortious act without the state, causing injury to a person or property within the state, § 302(a)(3), are not relevant to the instant case and the parties do not argue otherwise.

New York than a demonstration for purposes of finding jurisdiction under § 301 based on "doing business" in New York which subjects the defendant to suit on unrelated causes of action. *Beacon Enterprises, Inc.*, *supra*, at 763.  Specifically § 302(a)(1) "is a 'single act statute' and 'proof of one transaction in New York is sufficient to invoke jurisdiction, even [if] the [defendant] never enters the state, so long as the [defendant's] activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" *Daniel v. American Bd. of Emergency Medicine*, 988 F.Supp. 127, 229 (W.D.N.Y. 1997)(quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988), and citing *Beacon*, *supra*, at 764)) (bracketed text in original).  The test for jurisdiction under § 302(a)(1) is, therefore, qualitative rather than quantitative and the inquiry should be designed to determine whether the "defendant has engaged in some purposeful activity in this State in connection with the matter in suit." *Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc.*, 209 N.E.2d 68, 75 (N.Y. 1965).  In other words, "[i]f the defendant has 'transacted business' in New York, it is suable on any cause of action that arises out of the transaction." *Hoffritz*, *supra*, at 58; *see* N.Y. CPLR § 302(a)(1).

In the instant case, nothing in the record establishes, much less by a preponderance of the evidence, that the causes of action on which AVP sues arose out of any transaction occurring in New York.  Nor is there any basis on which to find that the action arose out of the 1975 Consent Judgment which called for AVP to turn over the original AVP masters to Cenco and provided for payment of royalties to AVP. Rather, the instant action arises out of the alleged conversion or negligent care of the AVP masters while in Defendants' possession.  As such, Manor Care is not subject to

personal jurisdiction in this court under long-arm jurisdiction under N.Y. CPLR § 302(a)(1).

### 2.    NY CPLR § 302(a)(4)

Although not raised by the parties, the court also considers whether Manor Care could be subject to long-arm jurisdiction in New York under N.Y. CPLR § 302(a)(4) based on a subsidiary's ownership of property in New York.  N.Y. CPLR § 304(a)(4) provides for personal jurisdiction in New York over one who "owns, uses or possesses any real property situated in the state."  Although Manor Care admitted that two of its subsidiaries previously owned real property in New York, and another subsidiary, Colonie Arden, LLC, currently owns real property in Albany County, Interrogatory Response No. 4, such ownership is insufficient to confer personal jurisdiction over Manor Care absent some relationship between AVP's claims and the real property. *Lancaster v. Colonial Mobile Freight Line, Inc.*, 581 N.Y.S.2d 283, 288 (App. Div. 1st Dep't. 1992) (citing *Aluminal Industries, Inc. v. Newtown Commercial Associates*, 89 F.R.D. 326, 329 (S.D.N.Y. 1980)).  As such, there is no personal jurisdiction over Manor Care in New York pursuant to N.Y. CPLR § 302(a)(4).

### 3.    <u>Due Process</u>

Alternatively, should the District Judge find that either § 301 or § 302 permits it to exercise personal jurisdiction over Manor Care with respect to the alleged common law tort claims, the court next examines whether the exercise of such jurisdiction comports with due process. *Bensusan Restaurant*, *supra*, at 27.  The exercise of personal

jurisdiction will not offend due process  requirements provided the defendant has

"certain minimum contacts . . . such that the maintenance of the suit does not offend

'traditional notions of fair play and substantial justice.'"  *Calder v. Jones*, 465 U.S. 783,

788 (1984) (citing *Milliken v. Meyer*, 311 U.S. 457, 463 (1940), and *International Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945)).   In determining whether sufficient

minimum contacts exist, the court considers "'the relationship among the defendant, the

forum, and the litigation.'"  *Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 242 (2d Cir.

1999) (quoting  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984).  Minimum

contacts are established if the plaintiff demonstrates that the cause of action arises out

of or relates to the defendant's contacts with the forum state, and that the defendant

"purposefully availed" himself of the privileges of doing business in New York such that

he could foresee being "haled into court" there.  *Kernan*, *supra*, at 242 (internal citations

and quotations omitted).

As alleged in the instant case, the only conceivable way in which Manor Care

could be subject to personal jurisdiction in New York is upon establishing that at least

one of Manor Care's subsidiaries operates as an agent or mere department of Manor

Care.  Nevertheless, even if that were established, the record still fails to establish, by a

preponderance of the evidence, that the specific conduct underlying the causes of

action, *i.e.*, Defendants' conversion or negligent care of the AVP masters, arises out of

or relates to any contact by Manor Care, or any of its subsidiaries, with New York, as

required.  *Kernan*, *supra*, at 242.  Nor does the record establish by a preponderance of

the evidence that Manor Care, although a holding company with subsidiaries throughout

the United States, actually "derived substantial revenue from interstate or international

commerce," as required.  *LaMarca*, *supra*, at 886.  As such, subjecting Manor Care to personal jurisdiction in New York would violate the Due Process Clause.

## **CONCLUSION**

Based on the foregoing, Defendant Manor Care Inc.'s motion to dismiss for lack of personal jurisdiction (Doc. No. 6) should be GRANTED.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September <u>27</u>, 2006
              Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.
SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 27, 2006
            Buffalo, New York

27